# JUDGE BATTS    09 CV    7555

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x
                                          :
CHARLES JOSEPH, JEFFREY UNGER,            :
STEFAN WOLKENFELD,  THE ROCK              :
STORE LLC, BRUCE GLICKMAN and             :
BRUCE SCHWARTZ,                           :
individually and on behalf of all others  :
similarly situated,                       :
                                          :
    Plaintiffs,                           :
                                          :
               v.                 :    COMPLAINT
                                          :
MICHAEL HYMAN, individually and           :    No.
in his official capacity as Commissioner  :
of the Department of Finance of the City  :
of New York; MARTHA E. STARK;             :
JAMIE WOODWARD, individually and          :
in her official capacity as Commissioner  :
of the Department of Taxation and         :
Finance of the State of New York;         :
ROBERT L.MEGNA;                           :
BARBARA G. BILLET;                        :
CITY OF NEW YORK;                         :
STATE OF NEW YORK;                        :
MICHAEL R. BLOOMBERG,                     :    CLASS ACTION
individually and in his official capacity :
as Mayor of the City of New York;         :
DAVID A. PATERSON,                        :
individually and in his official capacity as :
Governor of the State of New York;        :
ELIOT L. SPITZER; and                     :
GEORGE E. PATAKI,                         :
                                          :
    Defendants.                           :
_____ x

Plaintiffs CHARLES JOSEPH, JEFFREY UNGER, STEFAN

WOLKENFELD,  THE ROCK STORE LLC, BRUCE GLICKMAN and BRUCE

SCHWARTZ, by their attorneys Bromberg Law Office P.C., and the Law Office of Harley Schnall, as and for their Complaint against Defendants, allege as follows:

## NATURE OF CASE

1.      This is a civil rights class action, brought by plaintiffs CHARLES JOSEPH, JEFFREY UNGER, STEFAN WOLKENFELD,  THE ROCK STORE LLC, BRUCE GLICKMAN and BRUCE SCHWARTZ (hereinafter "Plaintiffs") on behalf of themselves and all others similarly situated, arising from Defendants' discriminatory tax scheme (the "Parking Tax Scheme") that imposes an 8% surtax upon renters of certain facilities in New York County ("Manhattan") for long-term parking, garaging and storing motor vehicles, but grants, upon application, to residents of Manhattan an exemption from paying that surtax, to the exclusion of residents of other states or other counties in New York State.

2.      As set forth below in more detail, Plaintiffs allege the differential and discriminatory tax scheme violates the United States Constitution, Art. I, § 8, Cl. 3 ("the Commerce Clause"), Art. IV, § 2, Cl. 1 ("the Privileges and Immunities Clause"), Amend. XIV, § 1, Cl. 2 ("the Privileges or Immunities Clause") and Amend. XIV, § 1, Cl. 4 ("the Equal Protection Clause"), and thereby is actionable under 42 U.S.C. § 1983; that the scheme also violates the New York State Constitution, Art. I, § 11, and that Defendants have perpetuated this scheme to the detriment of municipal taxpayer Plaintiffs and the other members of the Class.

3.      This action is not barred by the Tax Injunction Act, 28 § U.S.C. 1341, in that it does not seek to restrain the assessment, collection or levy of any tax

imposed or administered by the City of New York or the State of New York, but rather to challenge a facially discriminatory and unconstitutional tax exemption, the elimination of which would result in increased tax revenues.

## JURISDICTION

4.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action is filed to obtain injunctive and compensatory relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the United States Constitution and federal law under 42 U.S.C. § 1983.  This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

5.    Venue is proper under 28 U.S.C. § 1391(a)(2) because this District is where a substantial part of the events giving rise to the claim occurred.

## THE PARTIES

6.    Plaintiff CHARLES JOSEPH is a natural person who resides in New Jersey; who, in the course of engaging in interstate commerce, commutes daily in his automobile to Manhattan and parks that vehicle in a garage there at a monthly rate; who, in the course of engaging in interstate commerce, was assessed and paid a discriminatory New York City tax for storing that vehicle under the Parking Tax Scheme during the relevant alleged class period; who continues to be subject to paying this discriminatory municipal tax; and who, as a New York City taxpayer,

has been and continues to be denied the benefits of revenues forgone by the Parking

Tax Scheme.

7.      Plaintiff JEFFREY UNGER is a natural person who resides in New

Jersey; who, in the course of engaging in interstate commerce, has commuted daily

in his automobile to Manhattan and parked that vehicle in a garage there at a

monthly rate; who, in the course of engaging in interstate commerce, was assessed

and paid a discriminatory New York City tax for storing that vehicle under the

Parking Tax Scheme during the relevant alleged class period; and who, as a New

York City taxpayer, has been  denied the benefits of revenues forgone by the

Parking Tax Scheme.

8.      Plaintiff STEFAN WOLKENFELD is a natural person who resides in

New Jersey; who, in the course of engaging in interstate commerce, commutes daily

to Manhattan in his automobile and parks that vehicle in a garage there at a

monthly rate; who, in the course of engaging in interstate commerce, was assessed

and paid a discriminatory New York City tax for storing that vehicle under the

Parking Tax Scheme during the relevant alleged class period; who continues to be

subject to paying this discriminatory municipal tax; and who, as a New York City

taxpayer, has been and continues to be denied the benefits of revenues forgone by

the Parking Tax Scheme.

9.      Plaintiff THE ROCK STORE LLC, which is wholly owned by Stefan

Wolkenfeld, is an entity that has borne and continues to bear the expense of at least

a portion of this discriminatory New York City tax assessed against Wolkenfeld,

and that, as a New York City taxpayer, has been and continues to be denied the benefits of revenues forgone by the Parking Tax Scheme.

10.     Plaintiff BRUCE GLICKMAN is a natural person who resides in Nassau County in the State of New York; who commutes daily in his automobile to Manhattan and parks that vehicle in a lot there at a monthly rate; who was assessed and paid a discriminatory New York City tax for storing that vehicle under the Parking Tax Scheme during the relevant alleged class period; who continues to be subject to paying this discriminatory municipal tax; and who, as a New York City taxpayer, has been and continues to be denied the benefits of revenues forgone by the Parking Tax Scheme.

11.     Plaintiff BRUCE SCHWARTZ is a natural person and a New York City resident taxpayer who resides in Queens County in the State of New York and who has been and continues to be denied the benefits of revenues forgone by the Parking Tax Scheme.

12.     Defendant CITY OF NEW YORK at all relevant times was charged with administering the tax exemptions available only to Manhattan residents under the Parking Tax Scheme.

13.     Defendant STATE OF NEW YORK enabled and at all relevant times administered, in part, the discriminatory Parking Tax Scheme that the City of New York and its executives had in place.

14.     Defendant MICHAEL HYMAN is the Acting Commissioner of the Department of Finance of the City of New York; under his aegis the policies and

actions of the City of New York are set, continued and directed, and, as such he is a policy maker with respect to the conduct alleged herein. Mr. Hyman is sued in his personal and official capacities.

15.    Defendant MARTHA E. STARK is the former Commissioner of the Department of Finance of the City of New York; under her aegis the policies and actions of the City of New York were set, continued and directed, and, as such she was a policy maker with respect to the conduct alleged herein during the relevant alleged class period.

16.    Defendant MICHAEL R. BLOOMBERG is the Mayor of the City of New York; under his aegis the policies and actions of the City of New York are set, continued and directed, and, as such, he is a policy maker and supervisor with respect to the conduct alleged herein. Mr. Bloomberg is sued in his personal and official capacities.

17.    Defendant JAMIE WOODWARD is the Acting Commissioner of the Department of Taxation and Finance of the State of New York, which enabled and administered New York City's discriminatory parking tax scheme; under her aegis the policies and actions of the State of New York are set, continued and directed, and, as such, she is a policy maker with respect to the conduct alleged herein. Ms. Woodward is sued in her personal and official capacities.

18.    Defendant ROBERT L. MEGNA is a former Commissioner of the Department of Taxation and Finance of the State of New York; under his aegis the policies and actions of the State of New York were set, continued and directed, and,

as such, he was a policy maker with respect to the conduct alleged herein during the relevant alleged class period.

19.    Defendant BARBARA G. BILLET is a former Commissioner of the Department of Taxation and Finance of the State of New York; under her aegis the policies and actions of the State of New York were set, continued and directed, and, as such, she was a policy maker with respect to the conduct alleged herein during the relevant alleged class period.

20.    Defendant DAVID A. PATTERSON is the Governor of the State of New York; under his aegis the policies and actions of the State of New York are set, continued and directed, and, as such, he is a policy maker and supervisor with respect to the conduct alleged herein.  Mr. Patterson is sued in his personal and official capacities.

21.    Defendant ELIOT L. SPITZER is a former Governor of the State of New York; under his aegis the policies and actions of the State of New York were set, continued and directed, and, as such, he was a policy maker and supervisor with respect to the conduct alleged herein during the relevant alleged class period.

22.    Defendant GEORGE E. PATAKI is a former Governor of the State of New York; under his aegis the policies and actions of the State of New York were set, continued and directed, and, as such, he was a policy maker and supervisor with respect to the conduct alleged herein during the relevant alleged class period.

ALLEGATIONS

23.    The Commerce Clause of the United States Constitution (Article I, § 8, cl. 3) prohibits states and their agencies from impacting the flow of interstate commerce through non-uniform tolls, tariffs or taxation schemes.  Similarly, the Privileges and Immunities (U.S. Constitution Article IV, Section 2, Cl. 1) and Equal Protection Clauses (Amendment XIV, Section 1, Cl. 4) prohibit any state or state agency from discriminating against out-of-state residents through non-uniform tolls, tariffs or taxation schemes.  The Privileges or Immunities Clause (Amendment XIV, Section 1, Cl. 2) and/or one of the foregoing clauses also guarantees the constitutional right to travel.

24.    In accord with the enabling legislation contained in §1212-A of the New York State Tax Law, which is subtitled as "[c]ertain taxes of cities of one million or more administered by [the state] commissioner of taxation and finance," the City of New York enacted its own legislation, contained in 19 RCNY §19, to impose an 8% parking surtax on the sale and purchase of long-term (*i.e.*, on a monthly or longer basis) parking and garage services within Manhattan, but to exempt from that surtax similar transactions in which a qualifying Manhattan resident is the purchaser.

25.    During the Class Period, as defined below, and continuing today, Defendants have maintained the policy of assessing and collecting a surtax of 8% on the sale and purchase of long-term parking and garage services within Manhattan, but exempting similar transactions in which a qualifying Manhattan resident is the purchaser from that surtax.

26.    Under the Defendants' discriminatory tax scheme, the standard effective tax rate in Manhattan for monthly parking services for motor vehicles is 18.375%, comprising a city tax of 6%, state tax of 4.375% (including the Metropolitan Commuter Transportation District tax rate of 0.375%), and a Manhattan parking surtax of 8%; but residents of Manhattan have been, and continue to be, accorded the opportunity to obtain an exemption to the 8% surtax and, thus, an effective tax rate of 10.375%.

27.    The tax exemption set forth immediately above is available via application to the Department of Finance of the City of New York only to Manhattan residents with qualifying vehicles. (See application attached hereto as Exhibit "A" and incorporated as if fully set forth herein).

28.    During the relevant time period (that is, within the Class Period as described below), Plaintiffs paid for monthly parking services in Manhattan and were assessed and paid the higher nonresident tax rate, without any ability to obtain the lower effective tax rate available and accorded to similarly situated residents of Manhattan, the preferred area.

29.    The use of the commercial parking facilities and the taxes collected by Defendants all directly implicate interstate commerce and monetarily affect the travel of citizens of the United States who are not residents of the preferentially treated location in New York State, *i.e.*, Manhattan. The amount of the taxes discriminatorily collected or forgone is presently unknown and exclusively within the knowledge of Defendants, but the total is, upon information and belief,

substantial. No substantial government interest supports this discriminatory tax scheme, and whatever ends it seeks to achieve could be achieved by alternatives that do not discriminate according to residence.

30.    By granting this tax exemption to Manhattan residents and making it unavailable to residents of other states or other areas of New York State, Defendants have violated the Constitution's Commerce, Privileges and Immunities, Privileges or Immunities and Equal Protection Clauses, as well as Article I, § 11 of the New York State Constitution, and thereby injured Plaintiffs and other members of the class.

31.    The New York City Traffic Congestion Mitigation Commission, a body created by the State of New York with members appointed by the Mayor of the City of New York, the Governor of the State of New York, the City Council of New York City, the New York State Senate, and the New York State Assembly, estimated in its December 2007 and January 2008 reports to those executives and legislative bodies that the elimination of this discriminatory exemption would add $22 million of revenue annually to the city's coffers.

32.    Alternatively, the Independent Budget Office of the City of New York has estimated in each version of its annual "Budget Options Report for New York City" published between 2006 and 2009 that the removal of this discriminatory exemption would add three million dollars of revenue annually to the city's coffers.

33.    By maintaining this unlawful tax exemption to Manhattan residents, Defendants reduced the amount of tax revenues that would have otherwise been

collected, and thereby damaged Plaintiffs and other municipal taxpayers in the class who would have otherwise benefitted from millions of dollars in additional revenue.

34.    Defendants are liable under 42 U.S.C. § 1983 for these constitutional deprivations under color of state law because of their (i) actual direct participation in the constitutional violation, (ii) failure to remedy a wrong after being informed through a report or appeal, (iii) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, or (iv) failure to act on information indicating that unconstitutional acts were occurring.

35.    Defendants, in their respective roles as chief executive of the City of New York, commissioner of revenue of the City of New York, chief executive of the State of New York, and commissioner of revenue of the State of New York, perpetuated a tax scheme substantially similar to other residence-based tax schemes in New York that had been repudiated in recent years in decisions by the New York State Court of Appeals or the United States Supreme Court as violative of federal law.

36.    In 1998, the United States Supreme Court ruled in *Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287 (1998), that New York State unconstitutionally discriminated against nonresident taxpayers by denying them the right to deduct alimony payments from their New York income tax, but allowing

resident taxpayers to do so.  In doing so, it relied on a line of Supreme Court precedents dating back to 1920.

37.    In 2000, the New York Court of Appeals considered the constitutionality of a residence-based tax scheme that took effect upon the New York State Legislature's partial repeal of a then-existing personal income tax on those who lived outside New York City but earned wages within the city (the "New York City commuter tax") and that operated to the benefit of only those commuters who were New York State residents.  In *City of New York v. State*, 94 N.Y.2d 577 (2000), the Court of Appeals unanimously affirmed the Appellate Division's unanimous affirmance of a lower court's decision that such a scheme was unconstitutional as it impermissibly discriminated on the basis of residence, citing a number of the same U.S. Supreme Court precedents the *Lunding* court had relied upon, and several other Supreme Court precedents as well.

38.    Defendants CITY OF NEW YORK, STATE OF NEW YORK and PATAKI were parties to the decision in the matter of the New York City commuter tax scheme found to be unconstitutional (hereinafter the "Unconstitutional Commuter Tax Scheme").

39.    Defendant SPITZER, then Attorney General for the State of New York, represented the State in defense of the Unconstitutional Commuter Tax Scheme.

40.    Defendant PATERSON, then a Senator in the New York State Legislature, voted in favor of the legislation enacting the Unconstitutional Commuter Tax Scheme, which included an anticipatory provision that in the event

that the partial repeal of the pre-existing commuter tax was found to be unconstitutional, the tax would be repealed in its entirety.

41.    Additionally, Defendants BLOOMBERG, PATERSON and SPITZER had either actual or constructive notice, during the relevant alleged class period, of the aforementioned reports issued by the Traffic Congestion Mitigation Commission, which included a consideration of the elimination of the existing parking tax exemption for Manhattan residents and its estimated impact on increasing revenues.

42.    Moreover, Defendants BLOOMBERG and CITY OF NEW YORK had either actual or constructive notice, during the relevant alleged class period, of the "Budget Options for New York City" annual reports issued by the Independent Budget Office of New York City estimating the millions of dollars in revenue that the City of New York could gain if the Manhattan resident parking tax exemption were revoked.

43.    Defendants BLOOMBERG, PATERSON, SPITZER and PATAKI incurred supervisor liability because during the relevant alleged class period they had either actual or constructive notice of the constitutional violations alleged herein and were therefore personally involved in the perpetuation of the tax scheme.

44.    Although Defendants may have relied on tax statutes to perpetuate their scheme, and statutes are generally provided a presumption of constitutionality, no such presumption should attach where Defendants knew or

13

should have known that two later-enacted pieces of legislation effecting substantially similar residence-based tax discrimination had been declared unconstitutional in *Lunding* and in *City of New York v. State*.

45.    In perpetuating a scheme that violated clearly established constitutional law and the clearly established rights of Plaintiffs, all the individual Defendants failed to act in an objectively reasonable manner and are therefore precluded from asserting any available qualified immunity.

46.    Unless enjoined, Defendants CITY OF NEW YORK, STATE OF NEW YORK, BLOOMBERG, HYMAN, PATERSON and WOODWARD will continue to engage in this discriminatory tax scheme, thereby injuring those municipal taxpayers who are United States residents but not residents of Manhattan.

47.    Unless enjoined, Defendants CITY OF NEW YORK, STATE OF NEW YORK, BLOOMBERG, HYMAN, PATERSON and WOODWARD will continue to unlawfully forgo municipal tax revenues, thereby injuring municipal taxpayers.

## CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following class (the "Class") of:

> All persons who, since August 28, 2006 (the "Class Period") (i) paid for parking services in the County of New York on a monthly basis and paid the Manhattan parking tax surcharge of 8% or (ii) paid any municipal taxes to the City of New York. Excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

49.    The members of the class are so numerous as to render joinder impracticable.  Upon information and belief, thousands of United States citizens are damaged by the wrongful conduct at issue in this lawsuit.

50.    Common questions of law and fact exist as to all members of the Class, in that they all have and had their rights to the protections provided by the United States Constitution and Defendants have acted in a common manner towards Plaintiffs and all the members of the Class.   The common questions of law and fact that exist relate to the maintenance of the discriminatory tax policies alleged herein and whether Defendants have any basis for these policies so as to make them constitutionally permissible.  These claims are archetypically common and to all members of the Class.

51.    Plaintiffs' claims are typical of the claims of the members of the Class inasmuch as named Plaintiffs are members of the Class who have paid New York City taxes or who paid the discriminatory taxes and, by virtue of their continued use of the parking facilities and the maintenance of the Parking Tax Scheme, will hereafter continue to suffer constitutional injury and injury as taxpayers unless Defendants are enjoined from maintaining their discriminatory tax scheme. Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests that are adverse to the interests of the members of the Class, have retained counsel experienced in class action litigation to prosecute their claims, and are adequate Class representatives.

52.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the Class is impracticable given the large number of Class members and the fact that they are dispersed over a large geographical area.  Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.  The cost to the federal court system of adjudicating thousands of individual cases would be enormous.  Individualized litigation would also magnify the delay and expense to all parties and the court system.  By contrast, the conduct of this action as a class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, protects the rights of each member of the Class, and permits resolution of the controversy presented in a single, unitary proceeding.

53.    Upon information and belief, there are no other actions pending to address the Defendants' allegedly wrongful conduct.

54.    This action, in part, seeks declaratory and injunctive relief.  As such, the Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2), in that all Class members were subject to the same wrongful municipal tax policies and their individual monetary damages are incidental to the existence of the allegedly constitutionally violative policies.  In addition to that relief, or in the alternative, Plaintiffs seek certification under Rule 23(b)(3) or seek partial certification under Fed. R. Civ. P. 23(c)(4).

## COUNT I

**AS AND FOR A FIRST CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS FOR VIOLATION OF THE COMMERCE, PRIVILEGES AND IMMUNITIES AND/OR EQUAL PROTECTION CLAUSES OF THE UNITED STATES CONSTITUTION**

55.    Plaintiffs restate, reallege and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

56.    Defendants, under color of law, conspired with one another to deprive plaintiffs and members of the Class of their constitutional rights, including their rights  under the Commerce Clause, because by effectively taxing purchasers of long-term parking services at a higher tax rate than they taxed certain in-state residents, they discriminated against or imposed impermissible burdens on interstate commerce.

57.    The residents-only exemption in the Parking Tax Scheme facially discriminates to the disadvantage of out-of-state interests and to the advantage of in-state interests,  and it places burdens on interstate commerce that exceed any local benefit that allegedly may be derived from them.

58.    The individual Defendants, under color of law, conspired with one another to deprive Plaintiffs and members of the Class of their rights under the equal protection and due process of law sections of the Fourteenth Amendment because the programs impinged upon their fundamental rights by taxing them at a higher rate than they taxed residents of the preferred locale.

59.    Additionally, Defendants, under color of law, conspired with one another to deprive plaintiffs JOSEPH, UNGER, WOLKENFELD and members of

17

the Class who are not New York State residents of their constitutional rights under the Privileges and Immunities Clause of Article IV by effectively assessing a higher imposition on them than on certain New York State residents.

60.    The individual Defendants, acting personally and/or in their respective official capacities as supervisory and/or administrative officers of the City of New York or State of New York, under color of law, did institute, authorize, ratify, permit and/or acquiesce in the enactment and the enforcement of the discriminatory tax scheme, which violates Plaintiffs' and the Class's constitutional rights, including, but not limited to, Plaintiffs' and the Class's right to interstate travel, equal protection and/or due process of law, all in violation of the Commerce Clause, the Privileges and Immunities Clause and/or the Fourteenth Amendment and in violation of the laws of the United States and of 42 U.S.C. § 1983.

61.    As a direct and proximate result of Defendants' violation of one or more of the constitutional rights of Plaintiffs and the Class, Plaintiffs and the Class have sustained ascertainable damages, in an amount to be determined at trial, related to the differential treatment they suffered, including the forgoing of certain municipal taxes that would have otherwise been collected to their benefit,  and unless Defendants are enjoined, Plaintiffs and the Class will continue to suffer such damages hereafter.

62.    This conduct on the part of all Defendants represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

63.    Plaintiffs are entitled to declaratory, injunctive and compensatory relief, as is set forth below.

64.    Plaintiffs are entitled to attorney fees under 42 U.S.C. § 1988.


## COUNT II

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR VIOLATION OF THE NEW YORK STATE CONSTITUTION, Art. I, § 11.**

65.    Plaintiffs restate, reallege and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

66.    Defendants, under color of law, conspired with one another to deprive plaintiff GLICKMAN and members of the Class of their rights, including their rights under the New York State Constitution, Art. I, § 11 because the tax scheme imposed conditions different for residents of one geographic area of New York than those of all other areas of New York, thereby discriminating against all other New York residents other than those eligible for the exemption.

67.    The tax scheme is facially discriminatory against the interests of all New York residents not eligible for the exemption.  It places a burden that exceeds any local benefit that allegedly may be derived from it.

68.    The individual Defendants, acting individually and in their respective official capacities as supervisory and/or administrative officers of the City of New York or the State of New York, under color of law, did institute, authorize, ratify, permit and acquiesce in the enactment and the enforcement of the discriminatory

tax scheme which violate the New York State Constitutional rights of the Plaintiffs and the Class.

69.    As a direct and proximate result of Defendants' violation of Plaintiff's and the Class's New York State Constitutional rights, Plaintiffs and the Class have sustained ascertainable damages related to the differential treatment they suffered and the non-collection of municipal taxes in an amount to be determined at trial, and unless Defendants are enjoined will continue to suffer such damages hereafter.

70.    Plaintiffs and the Class are entitled to declaratory, injunctive and compensatory relief, as is set forth below, as well as such other relief as the Court deems proper, as well as costs of suit, as is set forth below.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JOSEPH, UNGER, WOLKENFELD, THE ROCK STORE, GLICKMAN and SCHWARTZ on behalf of themselves and on behalf of a Class of others similarly situated, request that this Honorable Court grant them the following relief:

A.    An order certifying this action as a class action under Fed. R. Civ. P. 23 with JOSEPH, UNGER, WOLKENFELD, THE ROCK STORE, GLICKMAN and SCHWARTZ as Class representatives;

B.    A declaratory judgment against Defendants declaring their discriminatory tax scheme to be unconstitutional and improper;

C.   A preliminary and permanent injunction enjoining Defendants from continuing to engage in their discriminatory parking tax policies, practices and programs;

D.   A judgment against all Defendants except the State of New York, awarding damages to each named Plaintiff and each member of the proposed Class in an amount to be determined by a Jury and/or the Court on both an individual and a class wide basis; and

E.   A monetary award for attorney's fees and the costs of this action, including, if applicable, expert witness fees, under 42 U.S.C. § 1988 and Fed. R. Civ. P. 23.

F.   For such other and further relief as to the Court seems proper, together with the costs of this action.

Dated:  New York, New York
        August 28, 2009

Respectfully submitted,

Brian L. Bromberg
One of Plaintiffs' Attorneys

**Attorneys for Plaintiffs and the Class**
Brian L. Bromberg
Peter T. Lane
BROMBERG LAW OFFICE, LLC
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

Harley J. Schnall
LAW OFFICE OF HARLEY J. SCHNALL

21

711 West End Avenue
New York, New York 10025
Tel: (212) 678-6546

Steven M. Fink
FINK & PLATZ
1235 Franklin Avenue, Suite 260
Garden City, NY 11530
Tel: (212) 587-9191

# Exhibit A

# NYC Finance

**NEW YORK CITY DEPARTMENT OF FINANCE ● PAYMENT OPERATIONS DIVISION**

# APPLICATION FOR MANHATTAN RESIDENT PARKING TAX EXEMPTION

— **PLEASE PRINT OR TYPE** —

| NAME OF APPLICANT: LAST | FIRST | M.I. | SOCIAL SECURITY NUMBER |
|---|---|---|---|

**PLEASE INDICATE THE REASON YOU ARE FILING THIS APPLICATION, COMPLETE THE APPROPRIATE SECTION(S) AND THE CERTIFICATION.**

**1.** ☐  This is a new request.  I do not currently have a Parking Tax Exemption Certificate for another vehicle on your files.
(Please complete Sections A, B and C)

**2.** ☐  This is a request to add an additional vehicle to your files.  I currently have a
Parking Tax Exemption Certificate for another vehicle with the license number:
(Please complete Sections B and C)

**3.** ☐  The following changes have occurred.  Please reissue a Parking Tax
Exemption Certificate.  My current certificate is for the License Plate number:

**3.1** ☐  A change in Manhattan residence.  (Please complete Section A.)

**3.2** ☐  A change in the parking garage or lot.  (Please complete Section B.)

**3.3** ☐  A change in vehicle information.  (Please complete Section C.)

## SECTION A - MANHATTAN RESIDENTIAL ADDRESS INFORMATION

ADDRESS (NUMBER AND STREET):

CITY AND STATE:   **New York, NY**

ZIP CODE:

**NOTE** The following documentation must be submitted when you complete this section:
● photocopy of **one** document showing your Manhattan residential address (e.g., residential lease or deed, voter registration card, utility bill, driver license, etc.)

## SECTION B - PARKING GARAGE OR LOT INFORMATION

NAME OF PARKING GARAGE OR LOT:

ADDRESS OF PARKING GARAGE OR LOT:     **New York, NY**     ZIP CODE:

Please provide the Consumer Affairs license number of the parking garage or lot, or the
Department of Finance assigned number, if the facility is a residential parking garage.
**Your application cannot be processed without this information**.  These numbers are
6 or 7 digits or letters and may be obtained from the parking facility operator.

## SECTION C - VEHICLE INFORMATION

LICENSE PLATE NUMBER:          MAKE OF VEHICLE:          YEAR:

**NOTE** The following documentation must be submitted when you complete this section:
● photocopy of the current vehicle registration. See *"How to complete the Application"*, Step 3, paragraph 3.

## CERTIFICATION

I hereby certify:  1) I live at the above residence, 2) I own my vehicle (or lease my vehicle) for a term of one year or more,
3) My vehicle is registered in New York in accordance with the vehicle and traffic law, 4) I garage my vehicle on a monthly
basis or longer and 5) I do not use my vehicle for trade or business.

SIGNATURE                                                    DATE

## MAILING INSTRUCTIONS

**Please send your completed application,
along with any required documentation to:**

**NYC Dept. of Finance, Parking Tax Exemption Section
59 Maiden Lane, 19th Floor, New York, NY  10038**

**NOTE** THIS APPLICATION WILL NOT BE PROCESSED UNLESS IT IS COMPLETE. ALL REQUIRED DOCUMENTATION MUST BE SUBMITTED. INCOMPLETE APPLICATIONS WILL BE RETURNED.



NEW YORK CITY DEPARTMENT OF FINANCE ● PAYMENT OPERATIONS DIVISION

# MANHATTAN RESIDENT
# PARKING TAX EXEMPTION APPLICATION
# INSTRUCTIONS

## PURPOSE OF EXEMPTION CERTIFICATE

The purpose of the Exemption Certificate is to provide proof to parking garage or lot operators that the owner or lessee of a motor vehicle is not required to pay the additional New York City 8% Parking Tax. For those who qualify, the tax on parking services will be at a rate of 10.375% instead of 18.375%. (The 10.375% rate includes the City 6% tax, the State 4% tax and the Metropolitan Commuter Transportation District Rate of 0.375% that is imposed under State law.)

## WHO IS ELIGIBLE

Any individual who fulfills **ALL** of the following requirements is eligible for a Parking Tax Exemption Certificate:

**1.** has his or her primary residence in Manhattan;

**2.** owns a motor vehicle or leases it for a term of one year or more;

**3.** registers the vehicle pursuant to the vehicle and traffic law at his or her primary Manhattan residential address, or, in the case of a leased vehicle that is registered pursuant to the vehicle and traffic law, leases the vehicle at such address; and

**4.** does not use the vehicle for business purposes.

A **primary residence** is a permanent place of residence where the individual resides or intends to reside more than 183 days in the 12 months following the date of the application for exemption. Factors examined in making this determination include the dwelling place designated as the individual's address on such items as his or her motor vehicle registration, income tax return, driver's license, voter registration card or documents filed with public agencies. (See 19 RCNY §19-01 "Primary Residence".)

The term "**lease for a term of one year or more**" shall not include any lease the term of which is less than one year irrespective of the fact that the cumulative period for which such lease may be in effect is one year or more as the result of the right to exercise an option to renew or other like provision.

The parking Tax Exemption Certificate will be issued provided that services are rendered on a monthly basis or longer at the garage or lot that is the principal parking facility when the vehicle is not in use.

A **principal parking facility** is the garage or lot where the motor vehicle is parked, garaged, or stored the majority of the time.

## IMPORTANT DEADLINES

If you are eligible for the exemption, you will receive a certificate by mail. First-time applicants should apply before the 15th of a month to ensure receiving a certificate by the first of following month. The exemption is good for two years if there are not changes to your address or vehicle.

**Please note the following:**

● The Parking Tax Exemption Certificate becomes effective on the first day of the month for which it is issued and remains valid until the date noted on the certificate.

● The certificate will be honored only by the parking garage or lot designated. The certificate will be valid only for the vehicle designated.

## PRIVACY ACT NOTIFICATION

The Federal Privacy Act of 1974, as amended, requires all agencies requesting identifying numbers to *inform* individuals from whom they seek information why the request is being made and how the information is used. The disclosure of identifying numbers, including Social Security numbers, is required by Sections 11-102.1 and 11-537 of the Administrative Code of the City of New York. Such numbers which are disclosed on any report or return are used for tax administration purposes, and as may be required by law, or when the taxpayer gives written authorization to this department for another department, person, agency or entity to have access (limited or otherwise) to the information contained in his/her return.

## HOW TO COMPLETE THE APPLICATION

**Step 1:** Print or type your name and social security number.

**Step 2.** Indicate the reason for filing this application by checking the appropriate box.

**1. New Request.** If you do not have a Parking Tax Exemption Certificate for the current period, please check this box and complete Sections A, B and C.

**2. Additional Vehicle.** If you have a Parking Tax Exemption Certificate for the current period, please check this box and indicate the license plate number. Then complete Sections B and C as they pertain to the additional vehicle.

**3. Reissuance of a Certificate due to a change of residential address, parking garage or lot, Consumer Affairs license number, motor vehicle or license plate subsequent to issuance of Exemption Certificate.** Should any of these changes occur during the effective period of your Parking Tax Exemption Certificate, the certificate will become invalid and a new certificate must be issued.

3.1 If you have changed your Manhattan residential address, please check this box and complete Section A.

3.2 If you have changed the parking facility, or the parking facility gets a new Consumer Affairs License Number, please check this box and complete Section B.

3.3 If you change your license plate number and/or your vehicle, please check this box and complete Section C.

Note: If more than one type of change has occurred, please check all applicable boxes and complete Sections A, B and/or C as appropriate.

**Step 3.** Complete Section A, B and/or C as appropriate.

**1. Section A.** Please provide us with your Manhattan residential address. You must provide photocopies of one document (e.g., residential lease or deed, voter registration card, utility bill, driver license, etc.) to prove residency.

**2. Section B.** Please provide us with the name and address of the parking garage or lot. Provide the parking garage or lot's Consumer Affairs license number or the Department of Finance assigned number. These numbers may be obtained from the parking garage or lot operator.

A **residential parking facility** is a garage or parking lot maintained, operated, or conducted by the owner or lessee of a multiple dwelling for the exclusive accommodation of the tenants or residents of such multiple dwelling and is therefore exempt from the Consumer Affairs Licensing Law.

**3. Section C.** Please provide us with the license plate number, make and year of vehicle. You must provide a photocopy of the current vehicle registration receipt showing your current Manhattan residential address, or, for a leased vehicle registered to the lessor, a current New York registration and a copy of the lease agreement showing your current Manhattan residence address.

**Step 4:** Certification. Sign and date the application.

**Step 5:** Mail the completed application and documentation to:

**New York City Department of Finance**
**Parking Tax Exemption Section**
**59 Maiden Lane, 19th Floor**
**New York, NY  10038**

## FOR INFORMATION OR ASSISTANCE, CALL (212) 232-1585

## IMPORTANT REMINDER

**Your application will not be processed unless it is complete and any required documentation is submitted. Incomplete applications will be returned.**

## PENALTIES

**Any person who improperly obtains or misuses a Parking Tax Exemption Certificate will be liable for penalties of not more than $100 in the case of negligence and not more than $500 in the case of fraud. A person filing a false application may also be prosecuted under the penal law. These shall be in addition to any penalties imposed under Section 1145 of Article 28 of the New York State Tax Law.**